**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

DONNA KOETJE,

    *Plaintiff*,

v.

AMANDA NORTON, STEIVE,
*Chief Medical Officer,* and SQUIER,
*Prison Health Services/Corizon*,

    *Defendants*.
_____/

CASE NO. 13-CV-12739

DISTRICT JUDGE DENISE PAGE HOOD
MAGISTRATE JUDGE PATRICIA MORRIS

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
ON DEFENDANT SQUIER'S MOTION TO DISMISS**
(Doc. 43)

**I.   RECOMMENDATION**

For the reasons set forth below, **IT IS RECOMMENDED** that Defendant Squier's motion be **GRANTED**.

**II.   REPORT**

    **A.   Background**

Plaintiff Donna Koetje is a state prisoner who is currently incarcerated by the Michigan Department of Corrections ("MDOC") at its Women's Huron Valley Complex in Ypsilanti, Michigan. On June 20, 2013, Plaintiff filed a *pro se* civil rights complaint alleging that her constitutional rights were violated by the named Defendants, specifically alleging that Defendants were deliberately indifferent to her serious medical needs in violation of the Eight Amendment of the United States Constitution. (Compl., Doc. 1, Am Compl. Doc. 11.) Plaintiff's specific claim against Defendant Squier is that Defendant Squier denied Plaintiff physical therapy. (Doc. 11 at

11-12.) U.S. District Judge Denise Page Hood has referred all pretrial matters to the undersigned magistrate judge. (Doc. 45.)

Defendant's motion argues that Plaintiff has failed to exhaust her administrative remedies against her. (Doc. 43.) Plaintiff responds that "staff fail to follow their own policy and procedures" and thus, "they are not entitled to argue noncompliance as a bar." (Doc. 56 at 4.)

### B. Motion standards

Although Defendant Squier labeled his motion a motion to dismiss, since the court has relied on documents outside of the pleadings, it will be considered a motion for summary judgment. A motion for summary judgment will be granted under Rule 56 of the Federal Rules of Civil Procedure when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). All facts and inferences must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party has "'the initial burden of showing the absence of a genuine issue of material fact' as to an essential element of the non-movant's case." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting *Celotex Corp. v Catrett*, 477 U.S. 317, 323 (1986)). In determining whether the moving party has met its considerable burden, a court may consider the plausibility of the moving party's evidence. *Matsushita*, 475 U.S. at 587-88. Summary judgment is also proper where the moving party shows that the non-moving party is unable to meet its burden of proof. *Celotex*, 477 U.S. at 325.

The non-moving party cannot rest merely on the pleadings in response to a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Instead, the non-moving party has an obligation to present "significant probative evidence" to show that "there is

[more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339-40 (6th Cir. 1993). When the non-moving party fails to adequately respond to a summary judgment motion, a district court is not required to search the record to determine whether genuine issues of material fact exist. *Street*, 886 F.2d at 1479-80. Instead, the court will rely on the "facts presented and designated by the moving party." *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 404 (6th Cir. 1992).

After examining the evidence designated by the parties, the court then determines "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52). Summary judgment will not be granted "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

    **C.**    **Exhaustion standards**

Congress passed the Prison Litigation Reform Act of 1995 ("PLRA") "in response to a sharp rise in prisoner litigation in federal courts." *Woodford v. Ngo*, 548 U.S. 81, 83 (2006). By passing the PLRA, Congress attempted to ensure that "the flood of nonmeritorious [prisoner civil rights] cases [did] not submerge and effectively preclude consideration of the allegations with merit." *Jones v. Bock*, 549 U.S. 199, 202 (2007). Congress equipped the PLRA with several mechanisms designed to reduce the quantity and increase the quality of the claims that came to federal court. *Id.* A "centerpiece" of the PLRA was the "invigorated" exhaustion requirement: "No action shall be brought with respect to prison conditions under § 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available

are exhausted." 42 U.S.C. § 1997e(a) (2000); *see also Woodford*, 548 U.S. at 84 ("A centerpiece of the PLRA's effort 'to reduce the quantity . . . of prisoner suits' is an 'invigorated' exhaustion provision.") (quoting *Porter v. Nussle*, 534 U.S. 516, 524 (2002)). Courts consider the PLRA's suits 'brought with respect to prison conditions' to include "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532.

The *Woodford* Court held that the PLRA's exhaustion of administrative remedies requires (1) that no remedies currently remain available, and (2) that the remedies that had been available to the prisoner were "properly" exhausted. 548 U.S. at 93. Prior to *Woodford* there were conflicting interpretations of the PLRA's exhaustion requirement. Some circuits interpreted the exhaustion requirement to mean that plaintiffs must have no more administrative remedies available before bringing their cases to federal court. *Id.* Others interpreted it to mean that plaintiffs must have "properly" exhausted their available remedies by following the agency's procedural requirements such as "deadlines and other critical procedural rules." *Id.*

In finding that exhaustion of remedies required "proper" exhaustion, the Court was persuaded by the "striking[]" similarities between the language of the PLRA and the doctrine of exhaustion in administrative law. *Id.* at 102. It also considered the purposes behind the exhaustion requirement, reasoning that an interpretation that did not require proper exhaustion would render the PLRA "toothless"–enabling a prisoner to bypass prison remedies by simply disregarding or ignoring deadlines. *Id.* at 95. "Proper exhaustion" means that the plaintiff complied with the administrative "agency's deadlines and other critical procedural rules." *Id*. at 90. Complaints and

4

appeals must be filed "in the place, and at the time the prison's administrative rules require." *Id.* at 87 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002)).

In *Jones*, the Court instructs us to look to the prison's policy itself when determining "whether a prisoner has properly exhausted administrative remedies–specifically, the level of detail required in a grievance to put the prison and individual on notice of the claim." 549 U.S. at 205, 218 ("The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the *prison's requirements*, and not the PLRA, that define the boundaries of proper exhaustion." (emphasis added)). Specifically, the *Jones* Court was determining whether a Plaintiff needed to identify the Defendant by name during the initial grievance process. Since MDOC's policy at the time did not require that level of specificity the Court did not find that the PLRA required it. *Id.*[1]

A plaintiff does not need to show proper exhaustion as a part of their complaint. *Jones*, 549 U.S. at 216. Rather, failure to properly exhaust remedies is now an affirmative defense. *Id.* The *Jones* Court struck down the Sixth Circuit's procedural rule placing the burden on prisoners to plead and prove exhaustion in their complaint. *Id.* at 921.

**D.     Analysis**

**1.     The Michigan Department of Corrections Grievance Policy**

The MDOC provides prisoners with a grievance procedure for bringing forward their concerns and complaints. *See* MDOC Policy Directive ("PD") 03.02.130 (eff. July 9, 2007). The MDOC's grievance procedure consists of steps that a prisoner must follow prior to filing a

---

[1] The MDOC has subsequently changed its policy, requiring that in order to properly exhaust remedies plaintiffs need to identify all defendants in the initial grievance that they later name in the subsequent federal complaint. *See infra.*

5

complaint in court, and each step is accompanied by a time limit. First, the grievant must attempt to resolve the issue with the person involved "within two business days after becoming aware of a grievable issue, unless prevented by circumstances beyond his/her control *or if the issue falls within the jurisdiction of the Internal Affairs Division* . . . ." MDOC PD 03.02.130(P) (emphasis added).

If the initial attempt to resolve the issue with the person involved is impossible or unsuccessful, the inmate must then submit a Step I grievance form within five days. MDOC PD 03.02.130(v). If the grievance is accepted, the prison staff is required to respond in writing to a Step I grievance within fifteen days, unless an extension is granted. MDOC PD 03.02.130(X). If the inmate is not satisfied with the response, or does not receive a response within fifteen days, he must file a Step II appeal within ten business days. MDOC PD 03.02.130(BB). Once again, if the inmate is dissatisfied with the response at Step II or does not receive a Step II response within fifteen days, he has ten business days to submit a Step III appeal to the Prisoner Affairs Section. MDOC PD 03.02.130(FF). The Step III response concludes the administrative grievance process.

Any allegations of prohibited sexual conduct involving prisoners falls under the jurisdiction of the Internal Affairs Division. MDOC PD 03.03.140 (requiring the Internal Affairs Division to investigate allegations of prohibited conduct). To properly exhaust remedies, this policy explicitly requires that inmates file grievances through the above 03.02.130 grievance policy *in addition to* Internal Affairs investigations. *Id.*

### 2. Application and Conclusions

As indicated above, Plaintiff's claim against Defendant Squier is that Defendant Squier denied Plaintiff physical therapy. (Doc. 11 at 11-12.) Plaintiff filed 24 grievances through Step

6

III since May of 2009. (Doc. 43, Ex. B.) However, as noted by Defendant Squier, none of the grievances that were properly exhausted through Step III were based on Defendant Squier's alleged denial of physical therapy. (Doc. 43 at 10-16.) Since none of the grievances filed by the Plaintiff have as their 'issue being grieved' failure to provide physical therapy by Defendant Squier, and because MDOC policy requires proper identification of the 'issue being grieved,' Plaintiff did not properly exhaust her administrative remedies as required by *Woodford*. *See Ward v. Luckey*, No. 12-CV-14875, 2013 WL 5595350, at *2 (E.D. Mich. Oct. 11, 2013)(grievance was insufficient to exhaust with respect to claims asserted in the complaint where grievance complained that defendant called plaintiff into the library during his yard time and complaint alleged first amendment violation based on his right to access the library in retaliation for past grievances). In addition, Plaintiff's failure to name or identify Defendant Squier in any grievance taken through Step III is also fatal and reveals that the exhaustion requirement has not been satisfied. *Woodford, supra.*

    **E.**    **Conclusion**

For all the reasons stated above, I recommend that Defendant Squier's motion to dismiss (or in essence, for summary judgment) be granted.

**III.**    **REVIEW**

Rule 72(b)(2) of the Federal Rules of Civil Procedure states that "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P.

7

72(b)(2). *See also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 155; *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). According to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  June 18, 2014                               /S PATRICIA T. MORRIS
                                                   Patricia T. Morris
                                                   United States Magistrate Judge

**CERTIFICATION**

I hereby certify that this Notice was electronically filed this date using the Court's CM/ECF system which delivers a copy to all counsel of record.  A hard copy was served by first class mail on Ms. Donna Koetje, #367956, Huron Valley Complex - Womens, 3201 Bemis Rd., Ypsilanti, MI, 48197; and in the traditional manner on District Judge Hood.

Date:  June 18, 2014                               By     s/*Jean L. Broucek*
                                                   Case Manager to Magistrate Judge Morris