**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

DONNA KOETJE,

    *Plaintiff*,                         CASE NO. 13-CV-12739

v.                                   DISTRICT JUDGE DENISE PAGE HOOD
                                      MAGISTRATE JUDGE PATRICIA MORRIS
AMANDA NORTON, STIEVE,[1]
*Chief Medical Officer,* and SQUIER,
*Prison Health Services/Corizon*,

    *Defendants*.
_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
ON DEFENDANT STIEVE'S MOTION FOR SUMMARY JUDGMENT**
(Doc. 60)

**I.    RECOMMENDATION**

For the reasons set forth below, **IT IS RECOMMENDED** that Defendant Stieve's motion be **GRANTED**.

**II.    REPORT**

    **A.    Background**

Plaintiff Donna Koetje is a state prisoner who is currently incarcerated by the Michigan Department of Corrections ("MDOC") at its Women's Huron Valley Complex in Ypsilanti, Michigan. On June 20, 2013, Plaintiff filed a *pro se* civil rights complaint alleging that her constitutional rights were violated by the named Defendants, specifically alleging that Defendants were deliberately indifferent to her serious medical needs in violation of the Eight Amendment of

---

[1] Although Defendant Stieve is listed on the docket as "Steive," I note that the documents presented by Defendant Stieve spell his name "Stieve." (Doc. 60.) I will therefore use the spelling utilized by the Defendant himself.

the United States Constitution. (Compl., Doc. 1, Am Compl. Doc. 11.) Plaintiff's specific claim against Defendant Stieve ("Stieve") is that although she "has never been medically assessed and evaluated by Dr. Stieve[,]" Stieve "fail[ed] to provide Plaintiff with her first post-operative surgeon's visit and refus[ed] to recommend a reversal of Plaintiff's ileosotomy." (Doc. 12 at 5.) U.S. District Judge Denise Page Hood has referred all pretrial matters to the undersigned magistrate judge. (Doc. 45.)

Defendant's motion argues that Plaintiff has failed to exhaust her administrative remedies against her. (Doc. 60.) Although requested to respond (Doc. 62), Plaintiff has not responded to the motion.

### B.     Motion standards

A motion for summary judgment will be granted under Rule 56 of the Federal Rules of Civil Procedure when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). All facts and inferences must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party has "'the initial burden of showing the absence of a genuine issue of material fact' as to an essential element of the non-movant's case." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting *Celotex Corp. v Catrett*, 477 U.S. 317, 323 (1986)). In determining whether the moving party has met its considerable burden, a court may consider the plausibility of the moving party's evidence. *Matsushita*, 475 U.S. at 587-88. Summary judgment is also proper where the moving party shows that the non-moving party is unable to meet its burden of proof. *Celotex*, 477 U.S. at 325.

2

The non-moving party cannot rest merely on the pleadings in response to a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Instead, the non-moving party has an obligation to present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339-40 (6th Cir. 1993). When the non-moving party fails to adequately respond to a summary judgment motion, a district court is not required to search the record to determine whether genuine issues of material fact exist. *Street*, 886 F.2d at 1479-80. Instead, the court will rely on the "facts presented and designated by the moving party." *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 404 (6th Cir. 1992).

After examining the evidence designated by the parties, the court then determines "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52). Summary judgment will not be granted "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

### C. Exhaustion standards

Congress passed the Prison Litigation Reform Act of 1995 ("PLRA") "in response to a sharp rise in prisoner litigation in federal courts." *Woodford v. Ngo*, 548 U.S. 81, 83 (2006). By passing the PLRA, Congress attempted to ensure that "the flood of nonmeritorious [prisoner civil rights] cases [did] not submerge and effectively preclude consideration of the allegations with merit." *Jones v. Bock*, 549 U.S. 199, 202 (2007). Congress equipped the PLRA with several mechanisms designed to reduce the quantity and increase the quality of the claims that came to

federal court. *Id.* A "centerpiece" of the PLRA was the "invigorated" exhaustion requirement: "No action shall be brought with respect to prison conditions under § 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (2000); *see also Woodford*, 548 U.S. at 84 ("A centerpiece of the PLRA's effort 'to reduce the quantity . . . of prisoner suits' is an 'invigorated' exhaustion provision.") (quoting *Porter v. Nussle*, 534 U.S. 516, 524 (2002)). Courts consider the PLRA's suits 'brought with respect to prison conditions' to include "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532.

The *Woodford* Court held that the PLRA's exhaustion of administrative remedies requires (1) that no remedies currently remain available, and (2) that the remedies that had been available to the prisoner were "properly" exhausted. 548 U.S. at 93. Prior to *Woodford* there were conflicting interpretations of the PLRA's exhaustion requirement. Some circuits interpreted the exhaustion requirement to mean that plaintiffs must have no more administrative remedies available before bringing their cases to federal court. *Id.* Others interpreted it to mean that plaintiffs must have "properly" exhausted their available remedies by following the agency's procedural requirements such as "deadlines and other critical procedural rules." *Id.*

In finding that exhaustion of remedies required "proper" exhaustion, the Court was persuaded by the "striking[]" similarities between the language of the PLRA and the doctrine of exhaustion in administrative law. *Id.* at 102. It also considered the purposes behind the exhaustion requirement, reasoning that an interpretation that did not require proper exhaustion would render the PLRA "toothless"–enabling a prisoner to bypass prison remedies by simply disregarding or

4

ignoring deadlines. *Id.* at 95. "Proper exhaustion" means that the plaintiff complied with the administrative "agency's deadlines and other critical procedural rules." *Id*. at 90. Complaints and appeals must be filed "in the place, and at the time the prison's administrative rules require." *Id.* at 87 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002)).

In *Jones*, the Court instructs us to look to the prison's policy itself when determining "whether a prisoner has properly exhausted administrative remedies–specifically, the level of detail required in a grievance to put the prison and individual on notice of the claim." 549 U.S. at 205, 218 ("The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the *prison's requirements*, and not the PLRA, that define the boundaries of proper exhaustion." (emphasis added)). Specifically, the *Jones* Court was determining whether a Plaintiff needed to identify the Defendant by name during the initial grievance process. Since MDOC's policy at the time did not require that level of specificity the Court did not find that the PLRA required it. *Id.*[2]

A plaintiff does not need to show proper exhaustion as a part of their complaint. *Jones*, 549 U.S. at 216. Rather, failure to properly exhaust remedies is now an affirmative defense. *Id.* The *Jones* Court struck down the Sixth Circuit's procedural rule placing the burden on prisoners to plead and prove exhaustion in their complaint. *Id.* at 921.

---

[2] The MDOC has subsequently changed its policy, requiring that in order to properly exhaust remedies plaintiffs need to identify all defendants in the initial grievance that they later name in the subsequent federal complaint. *See infra.*

**D.     Analysis**

**1.     The Michigan Department of Corrections Grievance Policy**

The MDOC provides prisoners with a grievance procedure for bringing forward their concerns and complaints. *See* MDOC Policy Directive ("PD") 03.02.130 (eff. July 9, 2007). The MDOC's grievance procedure consists of steps that a prisoner must follow prior to filing a complaint in court, and each step is accompanied by a time limit. First, the grievant must attempt to resolve the issue with the person involved "within two business days after becoming aware of a grievable issue, unless prevented by circumstances beyond his/her control *or if the issue falls within the jurisdiction of the Internal Affairs Division* . . . ." MDOC PD 03.02.130(P) (emphasis added).

If the initial attempt to resolve the issue with the person involved is impossible or unsuccessful, the inmate must then submit a Step I grievance form within five days. MDOC PD 03.02.130(v). If the grievance is accepted, the prison staff is required to respond in writing to a Step I grievance within fifteen days, unless an extension is granted. MDOC PD 03.02.130(X). If the inmate is not satisfied with the response, or does not receive a response within fifteen days, he must file a Step II appeal within ten business days. MDOC PD 03.02.130(BB). Once again, if the inmate is dissatisfied with the response at Step II or does not receive a Step II response within fifteen days, he has ten business days to submit a Step III appeal to the Prisoner Affairs Section. MDOC PD 03.02.130(FF). The Step III response concludes the administrative grievance process.

Any allegations of prohibited sexual conduct involving prisoners falls under the jurisdiction of the Internal Affairs Division. MDOC PD 03.03.140 (requiring the Internal Affairs Division to investigate allegations of prohibited conduct). To properly exhaust remedies, this policy explicitly

requires that inmates file grievances through the above 03.02.130 grievance policy *in addition to* Internal Affairs investigations. *Id.*

### 2. Application and Conclusions

In the instant case, Plaintiff filed a Step I grievance, number WHV-13-03-1060-1201, on March 9, 2013. (Doc. 60 at ID 997.) Plaintiff named Dr. Stieve and complained that about him "failing to allow me to get ileostomy reversal surgery." She further explained that Dr. Stieve "was not the surgeon who performed the surgery" because that doctor was Dr. Eggenberger. (*Id.*) On the grievance form, Plaintiff indicated that the date of the incident about which she complained occurred on February 22, 2013. She further indicated the following attempts to resolve the issue in writing before filing the grievance: (1) on February 23, 2013, she "kited Dr. Stieve about what the warden said"; (2) on February 25, 2013, she "kited medical records for copy of denial"; and (3) on March 4, 2013, she "rekited Dr. Stieve because he had not responded." (*Id.*) Although Plaintiff dates her Step I grievance March 9, 2013, MDOC records indicate that the Step I grievance was received on March 18, 2013. (Doc. 60 at ID 998.) After the Step I response was not favorable, Plaintiff filed a Step II Appeal on May 10, 2013, and the MDOC acknowledged receipt of the appeal on May 29, 2013. (Doc. 60 at ID 999.)

The Step II response "summary of Step II investigation" stated that the electronic medical records ("EMR") showed that Plaintiff "did not see Dr. Pei on 4/22/13, however she did see another MP on that date and the MP notes, reviewed surgeon's notes from June 2010; ileostomy involves the upper third of rectum (where bowel was non-ischemic), reversal very unlikely. The MP further notes, total colostomy/ileostomy on 6/2010, since then has been evaluated by outside provider and is receiving weekly supplies that are special ordered for her needs." (Doc. 60 at ID

7

1000.) The Step II response also noted that Plaintiff "may also follow PD 03.04.100 Health Services for outside health services at prisoner's expense."(*Id.*)

The Step III grievance response states the following:

> A Step I grievance is to be submitted within five business days after the grievant has attempted to resolve the issue, which was to occur within two business days of becoming aware of a grievable issue. After review, there is no indication the grievant attempted to resolve this issue prior to filing this grievance. The grievant [sic] is not consistent with the requirements outlined within PD 03.02.130.

(Doc. 60 at ID 1000.)

At Steps I and II, any failure to attempt to resolve the issue or untimeliness before filing the Step I grievance was overlooked and the merits of the grievance were addressed. However, at Step III, the failure or untimeliness at Step I was cited as the reason for the denial of the Step III appeal. "When prison officials decline to enforce their own procedural requirements and opt to consider otherwise-defaulted claims on the merits, so as a general rule will we." *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). At Steps I and II, prison officials declined to enforce any failure or untimeliness at Step I; however, at Step III, they did enforce their own procedural rule regarding failure or untimeliness at Step I. I therefore suggest that the prison officials in the instant case did not completely decline to enforce their own rules and did not waive the untimeliness argument altogether.

However, I suggest that the prison official's findings at Step III are at odds with the documentation proffered by the prison officials. Plaintiff's Step I grievance lists the attempts made to resolve the issue before filing the grievance and her attempts began on February 23, 2013, only one day after the events giving rise to the grievance occurred, i.e., February 22, 2013. (Doc. 60 at ID 997.) In addition, Plaintiff's Step I grievance is dated March 9, 2013, which was within 5 days

8

of her last attempt to resolve the issue before filing a grievance, i.e., March 4, 2013. (*Id.*) Under these circumstances, it is difficult to understand how Plaintiff's Step I grievance could be considered a failed or untimely. I therefore suggest that Plaintiff's grievance appears to have been properly exhausted.

However, I recommend, alternatively, that Defendant Stieve's motion may be granted on the merits. Plaintiff stated that she "has never been medically assessed and evaluated by Dr. Stieve[,]" but that Dr. Stieve "fail[ed] to provide Plaintiff with her first post-operative surgeon's visit and refus[ed] to recommend a reversal of Plaintiff's ileosotomy." (Doc. 12 at 5.) The summary in the Step II response indicates that the "surgeon's notes from June 2010" concluded that "reversal [was] very unlikely" and the more recent evaluation by a medical provider concurred that reversal was not likely. (Doc. 60 at ID 1000.) Plaintiff did not respond to the instant motion but by filing the complaint has indicated that she disagrees with the doctors' opinions and believes that her ileostomy should be reversed. Plaintiff's disagreement over the course of her treatment does not state a claim under the Eighth Amendment. *Burton v. Kakani*, 514 F. App'x 577, 578-79 (6th Cir. 2013); *Westlake v. Lucas*, 537 F.2d 857, 860 (6th Cir. 1976).

### E. Conclusion

For all the reasons stated above, I recommend that Defendant Stieve's motion for summary judgment be granted.

## III. REVIEW

Rule 72(b)(2) of the Federal Rules of Civil Procedure states that "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific

9

written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2). *See also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 155; *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). According to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  September 17, 2014                             /S PATRICIA T. MORRIS
                                                     Patricia T. Morris
                                                     United States Magistrate Judge

## CERTIFICATION

     I hereby certify that this Notice was electronically filed this date using the Court's CM/ECF system which delivers a copy to all counsel of record.  A hard copy was served by first class mail on Donna Koetje, #367956, Huron Valley Complex - Womens, 3201 Bemis Rd., Ypsilanti, MI, 48197.

Date:  September 17, 2014           By     s/*Jean L. Broucek*
                                                              Case Manager to Magistrate Judge Morris