UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DONNA KOETJE,

        Plaintiff,

                                 Case No. 2:13-CV-12739

v.                                Judge Denise Page Hood
                                Magistrate Judge Anthony P. Patti

AMANDA NORTON,
JEFFREY STIEVE and
HARRIET SQUIER,

           Defendants.

_____/

## REPORT AND RECOMMENDATION REGARDING MDOC DEFENDANT NORTON'S MOTION FOR SUMMARY JUDGMENT (DE 75)

**I.    RECOMMENDATION**: The Court should **(a)** conclude that Plaintiff's claims against Defendant Norton fail to state a claim upon which relief may be granted; **(b)** dismiss Plaintiff's claims against Defendant Norton in accordance with 42 U.S.C. § 1997e(c)(2), and **(c)** deem moot Defendant Norton's October 13, 2014 exhaustion-based motion for summary judgment (DE 75).

**II.    REPORT:**

    **A.    Procedural Background[1]**

---

[1] This case was originally assigned to Judge Hood and Magistrate Judge Binder. Judge Hood referred the case to Magistrate Judge Binder for pretrial matters.  DE

Plaintiff Donna Koetje (#367956) is currently incarcerated at the Michigan

Department of Corrections (MDOC) Women's Huron Valley Correctional Facility

(WHV).  On June 20, 2013, while incarcerated at WHV, she filed the instant

lawsuit *pro se*, naming as defendants Amanda K. Norton, R.N., of the MDOC's

Bureau of Health Care Services; Dr. Jeffrey Stieve, the MDOC's Chief Medical

Officer (CMO); and Harriet Squier, M.D., described as an employee of Prison

Health Services / Corizon.  DE 1 at 38, DE 1 at 1-2; *see also* DE 19, 27, 33, 35, 83.

Plaintiff is proceeding *in forma pauperis*.  DEs 2, 6, 9.

Plaintiff filed an amended complaint against the same three defendants on

October 3, 2013.  *See*, DE 12 ¶¶ 2, 10, 17.  In a general sense, Plaintiff's claims

against Defendant Norton are based upon alleged deliberate indifference to a

serious medical need in violation of the Eighth Amendment to the United States

Constitution.  *See* DE 12 at ¶¶ 2-9, 11.[2]

---

8.  On April 24, 2014, the case was reassigned from Magistrate Judge Binder to
Magistrate Judge Morris.  On May 14, 2014, Judge Hood referred all pretrial
matters to Magistrate Judge Morris.  DE 45.  On January 13, 2015, the case was
reassigned from Magistrate Judge Morris to me.  DE 81.

[2] I note that Plaintiff's original complaint was at least 25 pages and 62 paragraphs
in length, not including the attached exhibits, while Plaintiff's first amended
complaint is approximately 10 pages and 18 paragraphs in length.  *Compare* DE 1
at 1-25, DE 12 at 1-10.  Nonetheless, this report treats Plaintiff's amended
complaint as the operative complaint.  **Error! Main Document Only.***See Drake v.
City of Detroit, Michigan*, 266 F.App'x 444, 448 (6th Cir. 2008) ("Although Drake
pleaded a claim for abuse of process in his original complaint filed in state court,
that complaint is a nullity, because an amended complaint supercedes all prior

On September 22, 2014, Judge Hood entered an order which, in part, granted Defendant Squier's motion to dismiss and dismissed Defendant Squier only. DEs 43, 74.[3] Then, on February 12, 2015, Judge Hood entered an order which, in part, granted Defendant Stieve's motion for summary judgment and dismissed Defendant Stieve only. DEs 60, 82.[4]

Norton is the only remaining defendant. Norton filed an answer to the amended complaint on July 31, 2014. DE 71. Among her affirmative and/or special defenses are the allegations that Plaintiff's claims are barred by the statute of limitations and by 42 U.S.C. § 1997e for failure to exhaust available administrative remedies. DE 71 at 7 ¶¶ 14, 15.

### B.  Defendant Norton's Motion for Summary Judgment

---

complaints."); *Smith & Nephew Inc. v. Federal Ins. Co.*, 113 F.App'x 99, 102 (6th Cir. 2004) ("Rule 15 does provide that an amended complaint supercedes an original complaint with respect to which allegations and issues are presented to the court for disposition[.]").

[3] This order was informed by Magistrate Judge Morris's June 18, 2014 report and recommendation (DE 61), which was based on exhaustion.

[4] Defendant Stieve's June 17, 2014 dispositive motion was exhaustion-based. (DE 60 at 5, 13.) Magistrate Judge Morris's September 17, 2014 report and recommendation (DE 73) was based on exhaustion and, alternatively, the merits. Specifically, Magistrate Judge Morris alternatively stated: "Plaintiff's disagreement over the course of her treatment does not state a claim under the Eighth Amendment." DE 73 at 9.

Currently before the Court is Defendant Norton's October 13, 2014 motion for summary judgment (DE 75), Plaintiff's December 18, 2014 response (DE 78) and Defendant Norton's January 8, 2015 reply (DE 79). As framed by Defendant Norton, the issue before this Court is whether Plaintiff "did not timely appeal her Step I grievance and thus failed to properly exhaust her administrative remedies as required by the Prisoner Litigation Reform Act, 42 U.S.C. § 1997e(a)." DE 75 at 4.

### C.    Standard

Although Defendant Norton's motion is filed pursuant to Fed. R. Civ. P. 56(c) (DE 75 at 5, 12-13), this report recommends that the Court address Plaintiff's claims against Defendant Norton under Fed. R. Civ. P. 12(b)(6). When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "construe the complaint in the light most favorable to plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action"). Facial plausibility is

4

established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

Furthermore, the Court holds *pro se* complaints to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, even in pleadings drafted by *pro se* parties, "'courts should not have to guess at the nature of the claim asserted.'" *Frengler v. Gen. Motors*, 482 F. App'x 975, 976-77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)).

### D. Discussion

#### 1. Plaintiff's claims against MDOC Defendant Norton are based upon actions which allegedly took place on June 18, 2010.

##### a. Breach in the Standard of Care

Plaintiff takes issue with the care she received, or did not receive, from Defendant Norton on June 18, 2010 at WHV's Health Care Services. On that date, she allegedly presented with complaints that for eight (8) days she had been vomiting, constipated, fainting, experiencing severe excruciating abdominal pain

and unable to hold down food and liquids.  DE 12 ¶ 3.  According to Plaintiff,

Defendant Norton knew Plaintiff had been sick since June 15th with these

symptoms.  DE 12 at 3 ¶ 4.  She also claims her history was noted in the computer.

Moreover, Plaintiff claims that Norton was "fully aware of Plaintiff's advanced

age,[5] and that constipation is common in the elderly."  *See* DE 12 at 4 ¶ 8.

Plaintiff contends that "standard nursing care for an elderly person with a 20

year history of constipation[,]" would have been to perform a rectal exam to assess

for a fecal impaction.  DE 12 ¶ 3; *see also*, DE 12 at 4 ¶ 8.  In other words:

"Norton had a legal duty to do a rectal exam, digitally remove the fecal impaction,

and follow up with a cleansing enema."  DE 12 at 3 ¶ 4.

According to Plaintiff, Defendant Norton did not do a rectal exam to

determine whether or not Plaintiff had a fecal impaction, acted alone and did not

seek assistance from another medical professional, and administered Milk of

Magnesia without removing the fecal impaction.  DE 12 ¶¶ 3, 6, 8.  Plaintiff

contends that administration of Milk of Magnesia was not warranted unless the

fecal impaction was removed.  DE 12 at 3 ¶ 4.  She further contends that Norton

"deliberately and willfully chose not to perform her basic duty and chose instead to

just give Plaintiff Milk of Magnesia which is contraindicated when a fecal

impaction exists."  DE 12 at 4 ¶ 8.

---

[5] Plaintiff's date of birth is April 24, 1945.  DE 1 at 39.  Therefore, on June 18, 2010, she was sixty-four (64) years old.

### b.   Causation

Plaintiff contends that Defendant Norton's deliberate indifference to Plaintiff's serious medical needs was the proximate cause of her sigmoid colon perforation. Plaintiff also alleges that Defendant Norton's "inadequate and improper medical care" caused Plaintiff to have to undergo an emergency, life-saving ileostomy. DE 12 at 2-3 ¶ 3. Plaintiff further claims that Defendant Norton's administration of Milk of Magnesia was the proximate cause of Plaintiff's bowel perforation, because the "entire sigmoid colon [was] impacted with hard, clay-like stool which Norton failed to remove and follow up with a cleansing enema[.]" *Id*.

### c.   Damages

Plaintiff's complaint against Norton also discusses damages. According to Plaintiff, the sigmoid colon perforation leaked fecal matter into her peritoneal area and caused her to hemorrhage such that she needed blood transfusions before her surgery. DE 12 ¶ 3. Plaintiff contends that Defendant Norton provided "inadequate, improper, deficient, and deliberate[ly] indifferent medical care to Plaintiff that caused her to actually die and have to be resuscitated more than once and caused her to have to have life-saving emergency surgery which has now left Plaintiff with several permanent damages to her body and health." DE 12 at 2 ¶ 2. Plaintiff claims that Norton's breach of her duty caused Plaintiff to have a

permanent ileostomy and "a prolonged hospitalization with over 100 medical illnesses, disorders, infections, conditions, etc[.][,] to develop including sepsis which almost killed Plaintiff."  DE 12 at 3 ¶ 5.

> **2.     The Court need not resolve the question of whether the grievance at issue properly exhausted Plaintiff's administrative remedies as to her claims against Defendant Norton.**

Lawsuits by prisoners are governed by 42 U.S.C. § 1997e.  Among other things, this statute provides:  "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a) ("Applicability of administrative remedies"). Plaintiff was required to properly exhaust her claims against Defendant Norton by complying with the MDOC's Policy Directive 03.02.130, which concerns prisoner/parolee grievances.  *See Porter v. Nussle*, 534 U.S. 516, 524 (2002); *Woodford v. Ngo*, 548 U.S. 81, 93 (2006).  Plaintiff's MDOC Grievance Identifier WHV-13-06-2820-28e was appealed through Step III, however, it was rejected at the outset as untimely.

In the instant motion, Defendant Norton argues that Plaintiff did not properly exhaust her administrative remedies as required by 42 U.S.C. § 1997e(a).

More specifically, Defendant Norton contends that Plaintiff did not timely initiate her Step I grievance.

Defendant Norton asserts that Plaintiff's "lack of 'awareness' was due to her own inaction." DE 75 at 16. Plaintiff responds that she timely initiated her Step I grievance. DE 78 at 2. According to Plaintiff, she "was unaware of the fact that she had a fecal impaction that caused the obstruction until she received her surgical report on May 31, 2013. Until that date[,] she did not know of RN Norton's wrongdoing." In other words:

> Until I got this report, I did not know I had a fecal impaction which caused the obstruction which burst my bowel! Absolutely nobody in Healthcare told me this! So, how could I know?

DE 78 at 8.

In reply, Defendant Norton argues that Plaintiff's response and her Step I grievance contradict her assertion that she did not become "aware of a grievable issue" - here, Defendant Norton's alleged wrong actions - until she received her surgical report on May 31, 2013. DE 78 at 8, DE 79 at 6-8. Defendant Norton further argues that there is no justifiable reason for Plaintiff's three year delay in obtaining her medical records, which Plaintiff identified as the basis of her tardy enlightenment. DE 79 at 8. Thus, even if Plaintiff's October 3, 2013 amended complaint stated an Eighth Amendment claim against Defendant Norton for deliberate indifference to Plaintiff's serious medical needs based on the events of

June 18, 2010, which allegedly resulted in an June 19, 2010 ileostomy, Plaintiff

would still have to demonstrate that she was reasonably diligent in her efforts to

discover the alleged malfeasance.  This would be a tall order.[6]

However, it is not necessary for the Court to undertake the exercise of

reviewing the timeliness or exhaustion of Plaintiff's administrative remedies at this

juncture.  Should the Court agree with the Undersigned's recommendation that

Plaintiff's claims against Defendant Norton do not state an Eighth Amendment

claim upon which relief may be granted, the Court need not address whether

Plaintiff's grievance was, in fact, timely under MDOC PD 03.02.130.

### 3.    Plaintiff's claims against Norton fail to state an Eighth Amendment claim of deliberate indifference to a serious medical need.

Proceedings *in forma pauperis* may be dismissed at any time for failure to

state a claim upon which relief may be granted.  28 U.S.C. § 1915(e)(2)(B)(ii); *see

also*, 28 U.S.C. § 1915A(b)(1).  Moreover, a Court may dismiss a claim for failure

to state a claim upon which relief can be granted without first addressing

exhaustion:  "In the event that a claim is, on its face, frivolous, malicious, *fails to

state a claim upon which relief can be granted*, or seeks monetary relief from a

---

[6] By way of analogy, the Michigan statute of limitations for medical malpractice
contains a six month discovery exception to the general two year limitations
period, M.C.L. 600.5838(2), but this is applied based upon when the plaintiff
"discovered *or in the exercise of reasonable diligence should have discovered* [the]
alleged malpractice, whichever is later."  *Leary v. Rupp*, 89 Mich. App. 145, 148,
280 N.W.2d 466 (1979) (emphasis added).

defendant who is immune from such relief, the court may dismiss the underlying claim without first requiring the exhaustion of administrative remedies." 42 U.S.C. § 1997e(c)(2) (emphasis added).

It is clear that Plaintiff is attempting to allege an Eighth Amendment claim of deliberate indifference to a serious medical need. *See*, *i.e.*, DE 12 at 3 ¶ 6. "The deliberate indifference to serious medical needs of prisoners—e.g., the failure to respond to medical needs, intentional denial or delay of medical care, or intentional interference with a prescribed treatment—constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *Burgess v. Fischer*, 735 F.3d 462, 476 (6th Cir. 2013) (citing *Estelle v. Gamble,* 429 U.S. 97, 104–05 (1976)).

The Court applies a two-prong test with objective and subjective components to assess claims of deliberate indifference to serious medical needs of prisoners. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). First, the plaintiff must show that the deprivation alleged is "objectively, 'sufficiently serious.'" *Id.* (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). Second, the plaintiff must show that the prison official committing the act did so with a "'sufficiently culpable state of mind.'" *Id.* (citing *Wilson*, 501 U.S. at 302-03). The United States Court of Appeals for the Sixth Circuit applies the test as follows:

> First, we determine whether the plaintiff had a sufficiently serious medical need under the objective prong. A medical need is sufficiently serious if it has been diagnosed by a physician that has mandated treatment or it is so obvious that even a lay person would easily recognize the need for medical treatment. Second, we determine whether the defendant had a sufficiently culpable state of mind in denying medical care under the subjective prong.

*Burgess*, 735 F. 3d at 476 (internal citations and quotations omitted). To succeed on the subjective prong, a plaintiff must show "more than mere negligence, but something less than specific intent to harm or knowledge that harm will result. . . ." *Id.* (citing *Farmer*, 511 U.S. at 835). Specifically, the conduct must "demonstrate deliberateness tantamount to an intent to punish." *Molton v. City of Cleveland*, 839 F.2d 240, 243 (6th Cir. 1988). However, "a prisoner is not required to show that he [or she] was literally ignored by the staff to prove an Eighth Amendment violation, only that his [or her] serious medical needs were consciously disregarded." *Rouster v. Cnty. of* Saginaw, 749 F. 3d 437, 448 (6th Cir. 2014). Put another way,

> [a] government doctor has a duty to do more than simply provide some treatment to a prisoner who has serious medical needs; instead, the doctor must provide medical treatment to the patient without consciously exposing the patient to an excessive risk of serious harm.

*LeMarbe v. Wisneski*, 266 F.3d 429, 439 (6th Cir. 2001).

As an initial matter, it is questionable whether the symptoms of which Plaintiff complained – eight (8) days of vomiting, constipation, fainting, experiencing severe excruciating abdominal pain and inability to hold down food

12

and liquids (*see* DE 12 at 2-3 ¶ 3) - satisfy the objective prong of a sufficiently serious medical need.  *Williams v. Mustafa*, No. 08-10197, 2009 WL 483134, 15 (E.D. Mich. Feb. 24, 2009) (Cleland, J.) ("plaintiff merely alleges in his complaint that he suffered from stomach pains and chronic constipation.  These symptoms do not rise to the level of a serious medical need.").

In any event, even giving the plaintiff the benefit of the doubt as to having had a sufficiently serious medical need, the allegations in Plaintiff's complaint must still satisfy the subjective component; in other words, Plaintiff must still allege deliberate indifference.  As has been previously stated in this case and elsewhere, "Plaintiff's disagreement over the course of her treatment does not state a claim under the Eighth Amendment."  DE 73 at 9 (citing *Burton v. Kakani*, 514 F. App'x 577, 578-79 (6th Cir. 2013); *Westlake v. Lucas*, 537 F.2d 857, 860 (6th Cir. 1976)).  In other words, "[o]nly deliberate indifference to a serious medical need implicates the Eighth Amendment; negligence and medical malpractice may provide a basis for a state tort claim but do not violate the Constitution." *Williamson v. Wilson*, No. 99-5406, 2000 WL 1720550, 1 (6th Cir. Nov. 7, 2000) (referencing *Estelle*, 429 U.S. at 104-106 (1976)).  *See also, Owens v. O'Dea*, No. 97-5517, 1998 WL 344063, 4 (6th Cir. 1998).

Here, as to Defendant Norton's actions,[7] the Court should conclude that Plaintiff has not stated a claim of deliberate indifference to a serious medical need in violation of the Eighth Amendment.  To be sure, Plaintiff points out in her response brief that "a medical professional's failure to perform *any* of the tests that would be routinely conducted under similar circumstances rises above the level of simple negligence and can support a finding of deliberate indifference."  *Tate v. Coffee County, Tenn.*, 48 F.App'x 176, 180 (6th Cir. 2002) (emphasis added) (citing *Comstock v. McCrary,* 273 F.3d 693, 711 (6th Cir. 2001)), DE 78 at 9.

Nevertheless, the gravamen of Plaintiff's pleadings sounds in state-law medical malpractice.  First, Plaintiff's use of the words "standard of care," "breach of duty," and "proximate clause," sounds in terms of negligence.  *See*, *i.e.*, DE 12 at 2 ¶¶ 3, 5 & 8.[8]  So do her citations to *Bond v. Cooper*, No. 273315, 2009 WL

---

[7] As discussed earlier, Plaintiff's allegations as to Defendant Norton take issue with her June 18, 2010 treatment and the alleged results of such treatment.  *See* DE 12 ¶¶ 2-9.  To be sure, Plaintiff alleges that Defendant Norton knew Plaintiff had been sick since June 15th.  DE 12 at 3 ¶ 4.  However, to the extent this is based upon Plaintiff's version of the events of June 15, 2010 through June 17, 2010, I note that Plaintiff's October 3, 2013 amended complaint names only three (3) defendants – Norton, Stieve and Squier – and Plaintiff's December 18, 2014 description of the events of June 15th through June 17th does not identify Norton as a participant; in many cases, Plaintiff refers to "name unknown" or "names unknown," an unidentified nurse, or the "Unit 4 Logbook."  *See* DE 78 at 3-5; *see also* DE 1 at 42 (Pl.'s June 11, 2013 Affid.).

[8] "In order to establish a cause of action for medical malpractice, a plaintiff must establish four elements: (1) the appropriate standard of care governing the defendant's conduct at the time of the purported negligence, (2) that the defendant

529209 (Mich. App. Mar. 3, 2009), *vacated*, 485 Mich. 940, 774 N.W.2d 324 (2009).  DE 78 at 8.[9]

Second, the content of Plaintiff's claims against Defendant Norton challenges the clinical nurse's failure to perform a rectal exam, remove impacted stool, administer an enema and obtain a consultation, as well as her decision to instead administer Milk of Magnesia.  This is not a case where the patient presented to a health provider, who in turn failed "to perform any of the tests that would be routinely conducted" and who was therefore "deliberately indifferent." Rather, it is a case in which diagnostic examination and treatment were admittedly undertaken, even if arguably inadequate or incomplete.  As Plaintiff herself notes in both her original complaint and motion response, the June 18, 2010 MDOC Nurse Protocol notes indicate that the laxative treatments at issue were directed in conjunction with a clinical finding that "Abdomen is soft, non-distended.  Bowel sounds are hypoactive."  *See* DE 1 at 11, DE 1 at 39-40, DE 78 at 6. In considering

---

breached that standard of care, (3) that the plaintiff was injured, and (4) that the plaintiff's injuries were the proximate result of the defendant's breach of the applicable standard of care."  *Craig ex rel. Craig v. Oakwood Hosp.*, 471 Mich. 67, 86, 684 N.W.2d 296, 308 (2004); *see also*, Mich. Comp. Laws § 600.2912a.

[9] *See, i.e., Stogsdill v. Healthmark Partners, L.L.C.*, 377 F.3d 827, 830 (8th Cir. 2004) (in a malpractice action against the owner of a nursing and rehabilitation center, "As Stogsdill's condition made her prone to constipation, her admitting physician, Dr. Lowell Vereen, gave standing orders that she receive an impaction check every three days, an enema when necessary, and milk of magnesia as needed.").

the legal efficacy of Eighth Amendment deliberate indifference claims, federal courts "distinguish between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment.  Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.  Of course, in some cases the medical attention rendered may be so woefully inadequate as to amount to no treatment at all."  *Westlake*, 537 F.2d at 860 (internal citations omitted).

As noted above, Plaintiff contends that Milk of Magnesia is contraindicated when a fecal impaction exists.  DE 12 at 4 ¶ 8.  However, Phillips'® Milk of Magnesia is a saline laxative for the use of relief from occasional constipation (irregularity).  This is so, even though the September 12, 2014 version of the product's label warns the user to ask a doctor before taking if you have "stomach pain, nausea, or vomiting." [10]  While I note Plaintiff's explanation in her June 2013 Step I grievance that the Milk of Magnesia caused her bowels to perforate, she presented on June 18, 2010 with complaints of vomiting and constipation for several days (DE 1 at 39), and she was administered a laxative.  This appears to be

---

[10] *See* http://labeling.bayercare.com/omr/online/phillips-milk-of-magnesia-original.pdf.

a normal, logical and conservative treatment, even if not effective, and possibly contraindicated, in Plaintiff's case.[11]

In the instant case, Plaintiff's claims against Norton, although couched in Eighth Amendment deliberate indifference terms, really amount to a disagreement over the adequacy of Norton's actions and judgments, sounding in professional negligence. "Deliberate indifference must be more than a medical judgment call or an accidental or inadvertent failure to provide adequate medical care." *Clas v. Torres*, 549 F.App'x 922, 923 (11th Cir. 2013) (citing *Estelle,* 429 U.S. at 105–106). In short, in order to survive dismissal, such claims must constitute something "more than mere negligence." *Burgess*, 735 F.3d at 476. Here, they do not. Thus, Plaintiff's claims against Norton fail to state an Eighth Amendment deliberate indifference claim upon which relief may be granted. *Parra-Soto v. Campbell*, 73 F.App'x 86, 87 (6th Cir. 2003) ("Parra-Soto made no colorable claim that he suffered a grave medical condition that was deliberately left untreated. Rather, his own pleadings reveal that he received medical care when he requested it. Parra-Soto's difference of opinion regarding his diagnosis and treatment simply does not amount to an arguable Eighth Amendment claim of deliberate

---

[11] *See, i.e.*, *Robinson v. Western Maryland Health System Corp.*, No. DKC-10-3223, 2011 WL 2713462, 5 (D. Md. July 8, 2011) ("An abdominal X-ray taken on February 3, 2010, revealed a fecal impaction, which can also produce the symptoms Robinson has exhibited, and Robinson was given Magnesium Citrate, a laxative, to increase the water in the intestines.").

indifference to a serious medical need."); *Wright v. Sapp*, 59 F.App'x 799, 801 (6th

Cir. 2003) ("Wright's assertions, at most, alleged negligence and his disagreement

with the medical treatment that he received during his incarceration at the LAC,

which are insufficient to support an Eighth Amendment claim.").

### 4. Conclusion

From the facts which have been alleged, I recognize that Plaintiff may well

have not received optimum medical treatment and may have or have had a state

law medical malpractice claim, which is distinct from an Eighth Amendment claim

of deliberate indifference to a serious medical need. Unfortunately, Plaintiff chose

to file in the wrong Court on the wrong basis.

Giving the appropriate consideration to Plaintiff's first amended complaint

(DE 12), Defendant Norton's motion for summary judgment (DE 75), Plaintiff's

response (DE 78) and Defendant Norton's reply (DE 79), the Court should

conclude that Plaintiff's claims against MDOC Defendant Norton fail to state a

claim upon which relief may be granted. Accordingly, the Court should dismiss

Plaintiff's claims against Defendant Norton in accordance with 42 U.S.C. §

1997e(c)(2) and deem moot Defendant Norton's October 13, 2014 exhaustion-

based motion for summary judgment (DE 75).

## III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 932 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to

Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.


Dated: August 13, 2015        s/Anthony P. Patti
                              Anthony P. Patti
                              UNITED STATES MAGISTRATE JUDGE


I hereby certify that a copy of this document was sent to parties of record on August 13, 2015, electronically and/or by U.S. Mail.

                              s/Michael Williams
                              Case Manager to the
                              Honorable Anthony P. Patti